No. 8876.

## FREDERICK W. AMES VS. THE NEW ORLEANS AND RED RIVER TRANSPORTATION COMPANY.

Where the owners of a steamboat are captain and clerk of her and she is chartered for a year, the charterer stipulating the privilege of appointing the captain and officers, and no change is made of the existing officers, it is a tacit appointment of them.

The boat is not less in the custody of the charterer because the master is also part owner.

Where the charter-party gives the charterer full and absolute control of the boat when where and how she shall be employed, he is responsible for damage done to the boat when 'laid up' equally as when *en voyage.*

When the charter-party contains the agreement that the charterer shall be responsible for damage from unavoidable accident, and that the owner shall have the damage repaired which shall be reimbursed him by the charterer. the owner is entitled to judgment for such sum as he shall prove was expended by him for such repairs, after deducting the amount paid by insurance companies on their policies.

APPEAL from the Civil District Court, for the Parish of Orleans. *Tissot,* J.

*D. C. & L. L. Labatt* for Plaintiff and Appellee.

*W. S. Benedict* for Defendant and Appellant.

The opinion of the Court was delivered by

MANNING, J. The plaintiff sues to recover $1,505.56 ˉfor damage sustained by the steamboat W. J. Behan whilst under charter to the defendant company, alleging that this damage was occasioned by a violent storm while the boat was in the charge and custody of the charterer.

The boat was not pursuing any voyage. The storm occured Sept. 1, 1879 at which time and for a long time before she was "laid up," and was moored at Algiers in charge of watchmen.

The charter contains the stipulation that the company shall have the privilege of appointing the captain officers and men of the steamboat, and shall have full and absolute control of her as to time, when where and how she shall be employed, during the existence of the charter.

The plaintiff is half owner of the boat—one Wilkinson owns the other half. The plaintiff is the subrogee of Wilkinson's claim. Wilkinson was captain and Ames clerk. The above clause in the charter-party was intended to vest in the Company the right to discharge and put out the captain and clerk of boats that should come into the 'pool' which the Company had formed, even when these officers were the owners, and thus in that respect have full and absolute control of every boat that should become partner in the association. The concluding

clause of the paragraph stipulated the same control of the use of the boat—when, how, and where she should be employed. If it had pleased the Company to have ordered her to be unmoored in mid-summer and to be put in service, it certainly would have been futile for the owners to have disputed such order; and it was equally competent for the Company to have kept her out of service and fastened to the Algiers bank in mid-winter. The owners were absolutely bound, under the charter-party, to obey the Company's orders.

Great effort is made by counsel on the one side to fasten upon us the conviction that the two owners had been appointed respectively captain and clerk by the Company, and on the other that no such appointment had been made, although the Company had the option to appoint at its pleasure. The controversy on that matter is unimportant. The two owners were captain and clerk when the boat was chartered. They brought her into the pool. The Company could change the officers as it pleased, but the boat after her charter was not the less in the control and custody of the Company because she was officered by her owners. They became *eo instanti* the servants of the Company, bound by the very terms of the charter to carry their boat whither the Company ordered, and to keep her stationary if the Company prohibited her voyaging at all. If the Company became dissatisfied with their management, it could turn them off, but until it did turn them off by appointing others, they were as much the appointees of the Company as if a formal appointment had been made. The charter-party is an absolute demise of the boat, vesting in the charterer full dominion over her. 2 Arnould Insurance, 838. She was therefore not only in the legal but actual possession of the Company, officered and manned by its appointment while in service, guarded and protected by its watchmen while 'laid up.'

Nor is it of greater consequence who paid the watchmen, about which there is a prolonged contention. Whether the money was handed them by the captain or clerk or other employé of the Company, it was equally a payment by the Company. The money came from the Company. It was disbursed by their servants, albeit also owners.

It is disputed that the damage to the boat arose from unavoidable accident. The fury of the storm was unexampled. An unusually large number of disasters were caused by it. Piles, to which steamboats were fastened, were pulled from their places when the ropes would not break. Coal-boats broke their moorings and sunk. The calamity was not local. It marks an epoch in the history of the river.

But the defendant argues there was want of care, of proper precautionary action on the part of the watchmen in charge of the boat. They had not enough lines out—had a large expanse of tarpaulins stretching from below the gunwale to above the saloon deck that caught the wind and gave it fury—and they persisted in not putting out more lines although advised of the boat's insecurity, and persisted in not rolling up or taking down the tarpaulins although warned of the danger they increased.

When disaster from a storm was so general, evidence must be very strong to fasten upon those in charge of a boat responsibility for damage to it by reason of culpable negligence. Other boats escaped it is true, but there does not appear to have been wanting on the Behan the usual and proper care for boats laid up during summer. The Insurance Companies are not slow to investigate, and are prompt to detect culpable fault in those who claim compensation from them, and they paid the policies. But if the watchmen were derelict, whose fault was it? The boat was absolutely under the defendant's control. If the means adopted for the safety of the boat while she was laid up were insufficient, then the Company should have enforced the adoption of others. If the officers or men were incapable, the company should have appointed others.

Upon the questions of damage we think the lower court made a proper estimate.

Judgment affirmed.